UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

TYLER O'BRIEN JOHNSON, # 477544,

        Plaintiff,

v.

PAUL SCHREIBER,

        Defendants.

Case No. 1:12-cv-486

Honorable Paul L. Maloney

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. §1983. Plaintiff is an inmate at the Saginaw Correctional Facility (SRF). This lawsuit arises out of his confinement at the Oaks Correctional Facility (ECF). The defendant is Sergeant Paul Schreiber. Plaintiff alleges that on December 16, 2011, Sergeant Schreiber conducted a search of his prison cell and seized documents. An inspector conducted an administrative hearing and found that the documents in question constituted security threat group (STG) materials and that plaintiff would not be permitted to possess these contraband items. Plaintiff alleges that the withheld documents were religious materials and that defendant's actions violated his First Amendment rights. Plaintiff sues defendant in his individual and official capacities and seeks declaratory and injunctive relief and damages.

        The matter is now before the court on defendant's motion for summary judgment. (docket # 46). Plaintiff has filed his response. (docket # 47). For the reasons set forth herein, I recommend that plaintiff's claims for injunctive and declaratory relief against defendant be

dismissed as moot. I further recommend that plaintiff's claim for damages against defendant in his official capacity be dismissed with prejudice because it is barred by Eleventh Amendment immunity. I further recommend that defendant's motion for summary judgment be granted and that judgment be entered in defendant's favor on plaintiff's claim for damages against defendant in his individual capacity, because defendant is entitled to qualified immunity.

### Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir.

2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

**Proposed Findings of Fact**

The following facts are beyond genuine issue. Plaintiff is currently an inmate held in the custody of the Michigan Department of Corrections (MDOC) at the Saginaw Correctional Facility (SRF). Defendant is a MDOC employee at ECF. As the Security Threat Group Coordinator, defendant has specialized knowledge and expertise related to prison gangs. (Schreiber Aff. ¶¶ 2-5).

On December 16, 2011, Sergeant Schreiber conducted a search of plaintiff's cell and confiscated certain documents. Most of the documents were returned to plaintiff shortly thereafter, but some of the documents (docket # 47, Ex. B1) were withheld because they contained material associated with the MDOC designated Security Threat Group "Mexica." (Schreiber Aff. ¶¶ 6-8).

An inspector upheld the decision to withhold these contraband documents. (*Id.* at ¶ 7; 1/9/12 Administrative Hearing Report, docket # 48-1, ID# 324). The withheld documents are inflammatory and designed to foster racial hatred by referring to "whites" and Europeans as "parasites and cancers on the rest of humanity." (Ex. B-1 at 5). The papers endorse ethnic purity and encourage "warriors" to engage in "united actions" against whites. (*Id.* at 28, 29, 31, 36, 62). The materials endorse a military-style chain-of-command structure, which includes a loyalty oath promising to follow the dictates of superiors within the command structure.[1] (*Id.* at 119, 127).

On May 15, 2012, plaintiff filed this lawsuit.

## Discussion

**I.     Mootness**

Plaintiff is now an inmate at SRF. Defendant is employed by the State of Michigan at ECF. Defendant no longer has any authority over the conditions of plaintiff's confinement. Plaintiff's claims for injunctive and declaratory relief against defendant are moot. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

---

[1] In addition, the materials emphasize the importance of the number 13 and the letter M (*Id.* at 119, 125), both being recognized hallmarks of the Mexican Mafia gang. *See, e.g.*, *Hernandez v. Stainer*, 1:11-cv-489, 2013 WL 5773041, at * 6, 7 (E.D. Cal. Oct. 24, 2013); *Mercado v. Diaz*, No. 12-5831, 2013 WL 5817556, at * 4 (C.D. Cal. Oct. 22, 2013); *Vanegas v. Lopez*, No. 11-17, 2013 WL 3935875, at * 4 (C.D. Cal. July 29, 2013); *Zamora v. Biter*, No. 12-3798, 2013 WL 1912615, at * 5 (C.D. Cal. Apr. 3, 2013); *Fuentes v. Gonzlaes*, No. 1:10-cv-3, 2012 WL 6628897, at * 2 (E.D. Cal. Dec. 19, 2012); *Navarro v. Harrington*, No. 10-4765, 2012 WL 3071221, at * 3 (C.D. Cal. June 22, 2012).

## II. Official Capacity Claim

Plaintiff's claim for damages against defendant in his official capacity is barred by Eleventh Amendment immunity. The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). A suit against a state officer in his official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *VIBO Corp. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012). Furthermore, states and their departments are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71. Defendant is entitled to dismissal with prejudice of plaintiff's claim for monetary damages against him in his official capacity.

## III. Individual Capacity Claim

Defendant argues that he is entitled to summary judgment on plaintiff's claim for damages on the basis of qualified immunity. The first prong of qualified immunity analysis is whether the plaintiff has alleged and supported with evidence facts showing that the defendant's conduct violated a constitutional or statutory right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). This case is readily resolved on the basis of the second prong

of the qualified immunity standard, as the plaintiff had no clearly established right to possess these materials.

In *Brosseau v. Haugen*, 543 U.S. 194 (2004), the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when []he makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances []he confronted. ... Because the focus is on whether the officer had fair notice that h[is] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. at 198. The Supreme Court and the Sixth Circuit have emphasized that the second inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201). "'[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense.'" *Lyons v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005) (quoting *Brosseau*, 543 U.S. at 198-99); *see Perez v. Oakland County*, 466 F.3d 416, 428 (6th Cir. 2006) ("Because most legal rights are clearly established at some level of generality, immunity would be impossible to obtain if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly violated.'"). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Thus, '[t]he relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quoting *Saucier*, 533 U.S. at 201). Although it is not always necessary to find a case where identical conduct had previously been determined to be

unconstitutional,[2] in light of preexisting law, the unlawfulness must be apparent. *See Wilson v. Layne*, 526 U.S. 603, 615 (1999). If judges are in disagreement on an issue at the time the defendant acted, it is "unfair" to later subject the defendant to monetary damages "for picking the losing side of the controversy." *Pearson*, 555 U.S. at 245. "Ordinarily, a Supreme Court or Sixth Circuit decision on point is necessary." *Carver v. City of Cincinnati*, 474 F.3d 283, 287 (6th Cir. 2007). "Thus, officials are 'entitled to qualified immunity [when] their decision was reasonable, even if mistaken.'" *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)); *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) ("Qualified immunity leaves government authorities 'ample room for mistaken judgments.'") (quoting *Scott v. Clay County*, 205 F.3d 867, 873 n. 9 (6th Cir. 2000)). "The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *accord Shreve v. Franklin County, Ohio*, No. 13-3119, __ F.3d __, 2014 WL 463477, at * 7 (6th Cir. Feb. 6, 2014); *T. S. v. Doe*, No. 12-5724, __ F.3d __, 2014 WL 443376, at * 2 (6th Cir. Feb. 5, 2014).

Defendant's action did not violate any clearly established laws. A prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system [ ]." *Martin v. Kelley*, 803 F.2d 236, 240 n. 7 (6th Cir. 1986) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). It is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v.*

---

[2] "Of course, in an obvious case, [general constitutional] standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau*, 543 U.S. at 199.

*Johnston*, 334 U.S. 266, 285 (1948). The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives -- including deterrence of crime, rehabilitation of prisoners, and institutional security. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing *Pell*, 417 U.S. at 822-823 and *Procunier v. Martinez*, 416 U.S. 396, 412 (1974)).

"[C]ourts owe substantial deference to the professional judgment of prison administrators." *Beard v. Banks*, 548 U.S. 521, 528 (2006); *Toston v. Thurmer*, 689 F.3d 828, 830 (7th Cir. 2012) ("Not being experts in prison administration, but aware of the security problems in American prisons, judges sensibly defer within broad limits to the judgments of prison administrators."). The ongoing threat posed by prison gangs is well-documented. *See Wilkinson v. Austin*, 545 U.S. 209, 227 (2005) ("Clandestine, organized, fueled by race-based hostility, and committed to fear and violence as a means of disciplining their own members and their rivals, gangs seek nothing less than to control prison life and to extend their power outside prison walls. . . . Murder of an inmate, a guard, or one of their family members on the outside is a common form of gang discipline and control, as well as a condition for membership in some gangs. Testifying against, or otherwise informing on, gang activities can invite one's own death sentence."); *see also Griffin v. Gomez*, Nos. 09-16744, 11-15373, __F.3d __, 2014 WL 292528, at * 1 (9th Cir. Jan. 28, 2014) ("California has a chronic problem with murderous prison gangs, typically organized by ethnicity. The gangs engage in extortion, drug trafficking, assault, and murder within the prisons. And, since many prisoners are eventually released, and many have family and friends outside the prisons, the gangs' reach and ability to order assaults and murders extends outside the prisons."). Prison administrators and the courts are acquainted with the problem of religious exercise being used

as cover for prison gang-related activities. *See, e.g.*, *Moussazadeh v. Texas Dep't of Criminal Justice*, 709 F.3d 487, 493 (5th Cir. 2013) ("[I]nmate's claims of religious status for their groups and religious motivations for their activities are significantly hindering prison officials' efforts to crack down on gang activities, as gangs are adopting religious postures to mask their illegal doings.") (Jolly, J., dissenting from denial of rehearing *en banc*) (citations omitted). Further, the Sixth Circuit recognizes that a ban on written material from a STG group holding racial supremacist views and has been linked to gang-related activity "is reasonably related to the legitimate penological goal of preventing violence and maintaining security." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at * 2 (6th Cir. May 5, 2010); *accord Villanueva v. Rivera*, No. 5:12-cv-399, 2013 WL 790176, at * 3 (D. S.C. Mar. 4, 2013) ("While the right to hold a particular religious belief is absolute, the right to freely exercise a religious belief is not.").

The materials in question (Def. Ex. B-1) foster racial hatred, endorse ethnic purity, and attempt to establish a military-style command structure common in prison gangs. They contain very little religious content. Even assuming that defendant made a mistake in confiscating the papers, his conduct fell well within the area protected by qualified immunity. No clearly established law would have put defendant on notice that he was abridging constitutional safeguards by confiscating these clearly inflammatory materials.

**Recommended Disposition**

For the foregoing reasons, I recommend that plaintiff's claims for injunctive and declaratory relief against defendant be dismissed as moot. I further recommend that plaintiff's claim for damages against defendant in his official capacity be dismissed with prejudice because it is

barred by Eleventh Amendment immunity.  I further recommend that defendant's motion for summary judgment (docket # 46) be granted and that judgment be entered in his favor on plaintiff's claim for damages on the ground of qualified immunity.


Dated:  February 12, 2014            /s/  Joseph G. Scoville
                                     United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).